**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Princeton Excess and Surplus Lines Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Second Generation Incorporated, et al.,<br><br>Defendants. | No. CV-25-03275-PHX-DLR<br><br>**ORDER** |

Plaintiff/Counter-Defendant The Princeton Excess and Surplus Lines Insurance Company ("PESLIC") brings this declaratory judgment action against Defendants Mark Edward Lee and Counterclaimants Farid Nazari and Zakia Nazari (collectively, "the Nazaris"). The Nazaris bring counterclaims against PESLIC and Counter-Defendant Munich Reinsurance America, Inc. ("Munich Re"). Before the Court is Munich Re's motion to dismiss Count IV of the Nazaris' second amended countercomplaint ("SAC"). (Doc. 86.) The motion is fully briefed (Docs. 89, 96, 102) and for the following reasons is granted.

## I. Background[1]

PESLIC issued an insurance policy to nonparty Valley Metro Rail, Inc. ("Valley Metro") which included automobile liability coverage. (Doc. 1 ¶¶ 10, 11.) On February 23,

[1] The following background is derived from PESLIC's complaint (Doc. 1) and the Nazari's SAC (Doc. 74) and presumed true for purposes of this order. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

2021, during the policy period, the Nazaris were struck by a transit bus owned by or leased to Valley Metro and operated by Second Generation, Inc. ("Second Generation"). (*Id.* ¶ 21.) Lee, an employee of Second Generation, was driving the bus at the time of the accident. (*Id.*) On February 18, 2022, the Nazaris filed suit in the Superior Court of the State of Arizona, Maricopa County ("Underlying Lawsuit") against Second Generation and Lee. (*Id.* ¶ 22.)

Munich Re was hired to handle the claim on behalf of PESLIC. Munich Re exercised operational control and decision-making authority over PESLIC's claim handling and settlement evaluation at issue in this action. (Doc. 74 ¶ 11; Doc. 74-10; Doc. 89-1.) In May 2025, the Nazaris presented a settlement offer to PESLIC which PESLIC rejected on July 3, 2025. (Doc. 74 ¶¶ 68, 99.) Lee and Second Generation then entered into a written settlement agreement with the Nazaris that included an assignment of rights against PESLIC and a stipulation for entry of a stipulated judgment. (*Id.* ¶ 108.)

In response, PESLIC filed this action on September 8, 2025, to seek a judicial determination that its insurance policy issued to Valley Metro does not provide coverage for the claims asserted or judgments entered against Second Generation or Lee in the Underlying Lawsuit. (Doc. 1.) The Nazaris' SAC brought four counterclaims: three against PESLIC and one against Munich Re. (Doc. 74.) Munich Re now moves to dismiss Count IV of the SAC for aiding and abetting insurance bad faith. (Doc. 86.)

## II. Motion to Dismiss

### A. Legal Standard

"To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Well-pled factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Cousins*, 568 F.3d at 1067. The court's task merely is to determine whether those well-pled factual allegations plausibly state a claim to relief under governing law. *See Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). However, the court "does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

**B. Analysis**

Munich Re argues that aiding and abetting insurance bad faith requires allegations of conduct separate and distinct from the insurer's alleged bad faith conduct. (Doc. 86 at 10–12.) Accordingly, Munich Re asserts that the Nazaris fail to state a claim against Munich Re because the allegation of aiding and abetting is based on the same conduct that forms the basis for the claim against PESLIC for bad faith. (*Id.* at 12–15.)

In Arizona, an individual is liable for aiding and abetting the commission of a tort if: "(1) the primary tortfeasor committed a tort that injured the plaintiff; (2) the secondary tortfeasor defendant knew that the primary tortfeasor's conduct was a breach of its duty; and (3) the secondary tortfeasor substantially assisted or encouraged the primary tortfeasor in the achievement of the breach." *Lambert v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-00521-JWS, 2014 WL 5432154, at *2 (D. Ariz. Oct. 24, 2014); *see also Wells Fargo Bank v. AZ Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002). "For there to be harm to a third person, there must be at least two tortfeasors." *Ortiz v. Zurich Am. Ins. Co.*, No. CV-13-02097-PHX-JAT, 2014 WL 1410433, at *3 (D. Ariz. April 11, 2014). In addition, "there must be some factual allegation showing [the secondary tortfeasor] took separate action in concert with the action giving rise to [the plaintiff's] claim against the [primary tortfeasor]." *Id.*; *see also Jones v. Colo. Cas. Ins. Co.*, No. CV 12-1968-PHX-JAT, 2013 WL 4759260, at *3 (D. Ariz. Sept. 4, 2013).

Here, Count IV against Munich Re for aiding and abetting is based on the bad faith of PESLIC in Count III. Count IV summarizes PESLIC's bad faith as follows: "As alleged in Count III and incorporated herein, PESLIC committed insurance bad faith by failing to conduct a reasonable investigation of the Nazari claim." (Doc. 74 ¶ 161.) Count III enumerates specific ways that PESLIC failed to conduct a reasonable investigation. (*Id.* ¶¶

142–43.) Count III also alleges that "PESLIC's rejection letter of July 3, 2025" did not provide an adequate explanation and adopted and relied upon a conclusory denial. (*Id.* ¶¶ 144, 146.)

The aiding and abetting claim, Count IV, alleges that "Munich Re exercised direct and operational control over all material aspects of claims handling, including *investigation*, evaluation, and settlement decision-making on behalf of PESLIC." (*Id.* ¶151 (emphasis added)). It also alleges that "Munich Re directed and implemented the decision to reject the settlement opportunity, including authoring and issuing the July 3, 2025 rejection letter" which Count III refers to as "PESLIC's rejection letter." (*Id.* ¶¶ 154, 146.) To summarize, the claim alleges, "Munich Re's total operational control over all claims-handling functions and its execution of the rejection constitutes substantial assistance to PESLIC's tortious conduct." (*Id.* ¶ 184.)

Assuming the truth of these allegations, the Nazaris have alleged that PESLIC committed the tort of insurance bad faith by failing to reasonably investigate their claim and ultimately rejecting settlement. To state a claim for aiding and abetting, however, the Nazaris "must not only allege actions that constitute a breach of the insurer's duty, but also separate actions performed by the adjuster that substantially assisted or encouraged the breach." *Lambert*, 2014 WL 5432154, at *3. Here, there are no allegations that Munich Re engaged in any separate tortious conduct that aided or abetted the alleged bad faith. PESLIC could not have committed the alleged bad faith without Munich Re, who conducted the investigation of the claim and authored the settlement rejection. In other words, Munich Re is alleged to have committed the primary tort; it is not alleged to have taken separate actions to assist PESLIC in committing the primary tort. "If the alleged actions that constitute the breach are exactly the same as those that constitute the adjuster's assistance or encouragement, the plaintiff has failed to state an aiding and abetting claim." *Lambert*, 2014 WL 5432154, at *3; *see also Rosso v. Liberty Ins. Co.*, No. CV-16-00860-PHX-DLR, 2016 WL 4013614, at *2-3 (D. Ariz. July 27, 2016) (dismissing aiding and abetting claim where the plaintiff failed to allege secondary tortious conduct).

In addition, contrary to the Nazaris' argument, *Morrow v. Boston Mutual Life Insurance Co.*, CIV 06-2635-PHX-SMM, 2007 WL 3287585 (D. Ariz. Nov. 5, 2007) supports the Court's analysis. In *Morrow*, the plaintiff alleged two distinct tortious actions against two defendants: (1) the insurer hired a biased medical examiner to review the claim, and (2) the medical examiner knowingly provided a biased and unsupported opinion to deny benefits. *Id.* at *1, 5. The Court found that these allegations were sufficient to state a claim of aiding and abetting against the medical examiner. *Id.* at *6. Unlike *Morrow*, the Nazaris allege no separate tortious conduct committed by Munich Re. Instead, they rely on the same conduct in alleging bad faith and aiding and abetting.

Consequently, the Court finds the Nazaris fail to state a claim for aiding and abetting against Munich Re. The claim is dismissed.

## III. Leave to Amend

### A. Legal Standard

After amending a complaint for the first time, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Leave to amend should be freely granted "when justice so requires." *Id.* Nevertheless, the Court enjoys "particularly broad" discretion to deny a motion for leave to amend when "the plaintiff has previously amended the complaint," as the Nazaris have done here. *Ascon Props. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

The Court considers four factors when determining whether leave to amend is appropriate: bad faith, undue delay, prejudice to the opposing party, and futility. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Futility alone justifies denying leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (1995). A motion to amend is futile if the amended portion fails to state a plausible claim for relief. *Chabrowski ex rel. ARTBE Enters., LLC v. Litwin*, No. CV-16-03766-PHX-DLR, 2017 WL 2841212, at *2 (D. Ariz. Jan. 19, 2017).

. . . .

. . . .

**B. Analysis**

The Nazaris respond, in the alternative, that an attached third amended countercomplaint ("TAC") cures any pleading defects. (Doc. 89 at 16–17; Doc. 89-15.) The Court disagrees.

The TAC still alleges that "PESLIC failed to conduct a reasonable investigation" and points to problems with its rejection. (Doc. 89-15 ¶¶ 141, 145.) The TAC additionally summarizes PESLIC's acts of bad faith as follows:

> (i) PESLIC's exercise of its retained "ultimate and final authority over all decisions and policies" to adopt, ratify, and issue the July 3, 2025 rejection in PESLIC's name, (ii) PESLIC's failure to perform its nondelegable duty of good faith and fair dealing to its insureds, (iii) PESLIC's failure to require Munich Re to demonstrate compliance with the Board-approved written criteria, procedures, and guidelines the delegation agreement required PESLIC to maintain, and (iv) PESLIC's adoption of Munich Re's recommendation without any independent review, supervision, or good-faith evaluation.

(Doc. 89-15 ¶ 184.) The TAC then alleges that Munich Re substantially assisted PESLIC's bad faith, thereby aiding and abetting, by

> (i) drafting, authoring, and transmitting the July 3, 2025 rejection on Munich Re Specialty letterhead and from a Munich Re email account, (ii) conducting its own internal committee review process, (iii) setting and maintaining an inadequate reserve, (iv) failing to obtain or analyze the Campbell jury study, (v) maintaining prolonged confusion about the coverage tower, and (vi) failing to correct the documented mutual misunderstanding between defense counsel and Counterclaimants' counsel regarding the available coverage.

(*Id.* ¶ 166.)

The Nazaris go to great lengths to detail actions by Munich Re that are separate from the actions of PESLIC. Unfortunately for the Nazaris, none of these allegations cure the deficiencies in the SAC because these actions are simply more detailed examples of the bad faith. That is, these allegations detail how PESLIC, through its delegation to Munich Re, failed to conduct a reasonable investigation and ultimately issued a flawed settlement rejection. Accordingly, amendment would be futile and leave to amend is denied.

**IT IS ORDERED** that Munich Re's motion to dismiss (Doc. 86) is **GRANTED**.

Dated this 10th day of August, 2026.

Douglas L. Rayes
Senior United States District Judge